Our second case this morning is Brown v. Krueger. All right, and I see Ms. Waters and Mr. Beetz. Ms. Waters, you may proceed. Thank you, Judge. Good morning, and may it please the Court. My name is Robin Waters, and I represent the appellant, Alan Brown. The issue in this appeal of the denial of Mr. Brown's habeas petition is whether the district, whether he was correctly sentenced under the Armed Career Criminal Act as having three prior felonies for either a serious drug offense or a violent felony, such that it was appropriate to increase his sentence beyond the 10-year statutory maximum penalty to a sentence of 24 years in custody. The parties agree that Mr. Brown does have two prior drug felonies that qualify, but disagree that any of his other remaining criminal convictions qualify. Following the briefing, there are really only three convictions that are in issue, and they're all Missouri state convictions. The first is for the unlawful use of a weapon, the second for second-degree assault, and the third is for resisting arrest. None of these prior criminal convictions categorically requires the kind of active and intentional use of violent physical force that is required to qualify as a violent felony under the Force Clause of the ACCA. And Ms. Waters, you've agreed that Eighth Circuit law applies? Your Honor, yes, Eighth Circuit law does apply. I know the Seventh Circuit has not ever firmly decided whether it is the circuit of conviction or the circuit of confinement that which law applies, but in this case, we generally agree that the Eighth Circuit law applies. However, in this case in particular, there are specific reasons why we think we can, that the Eighth Circuit law isn't controlling here, and I'll get to that when I get into Mr. Brown's unlawful use of a weapon. Actually, I'd like you to get to that right now, because the case, it seems to me, mostly turns on this unlawful use of a weapon for exhibiting in an angry and threatening manner, or angry or threatening manner. The Eighth Circuit has held that that categorically qualifies under the Force Clause, and you've agreed that Eighth Circuit law applies, so I'm not understanding why that doesn't completely resolve the case. Sure, so the government cites to a number of cases, including McDowell and Pulliam. Those cases are all pre-Mathis cases, which Mathis being the United States Supreme Court case, and that's the question. Right, except Hudson is not, and Hudson reaffirmed Pulliam. That's right, Your Honor. We don't think Hudson actually properly followed what the Supreme Court was saying in Mathis, because the Supreme Court in Mathis said you have to look to a applicable- Right, but if I could interrupt one more time, and I apologize for continuing to interrupt. Once you've agreed that Eighth Circuit law applies, you're stuck with Eighth Circuit law, even if you disagree with it, or can make a good argument that the Eighth Circuit got it wrong. Yeah, and- If we conclude that, as a choice of law matter, Eighth Circuit law applies, and the Eighth Circuit has said that this conviction counts, then that concludes the matter. That's actually the exact point we're making, that there is an important reason why we can discount the court's decision in Hudson, because it never means to- Can you distinguish, or can you discount? We can't discount, we can't overrule the Eighth Circuit, unless we apply Seventh Circuit law. And if we do that, the Eighth Circuit says we think one thing, and the Seventh Circuit says we think something else. We don't overrule them. So, we can distinguish that case, but I'm having a hard time with that. So, we believe that what the Supreme Court said in Mathis is that every court that is looking at an act of qualifying predicate, or possibly act of qualifying predicate, has to look to authoritative sources of state law. And that's what the Hudson court didn't do in its case. All it did was cite back to its pre-Mathis cases, none of which meaningfully analyze the statute. So, you're saying they're wrong. So, then you're saying we should apply Seventh Circuit law. Yes, yes. In a way, I mean, we still think that the Eighth Circuit law applies, we just think that under this specific Eighth Circuit case got it wrong. And it was, they got it wrong because it didn't actually look to the state court authority. Yeah, except that that's an incoherent position. If the choice of law is Eighth Circuit, and you agree with that, then you take Eighth Circuit law all the way down. And the Eighth Circuit has conclusively held, post-Mathis, that this conviction counts. Respectfully, you know, there is a debate in, generally, whether in a 2241 habeas petition, whether Eighth Circuit or Seventh Circuit law applies. If the court is saying that Seventh Circuit law has to apply in order to find for Mr. Brown, then I understand what the court is saying. There is a debate about the choice of law issue, whether it should be the circuit of conviction, or the circuit where, the forum circuit where the habeas petition is being heard. But once you've made a choice of law stipulation, which you have in the form of an agreement that Eighth Circuit law applies, and there's a conclusive case on point in the Eighth Circuit, you can't ask us to disagree. We're bound by it as though we were the Eighth Circuit. Respectfully, we think that what we're effectuating is the Supreme Court precedent. And really what the Supreme Court is what all courts should be following. And the Supreme Court in Mathis said that state, that circuit courts in the field have to look to state court decisions. And so for that reason, respectfully, we think that our argument follows the final court, which is the United States Supreme Court. And for that reason, we think that really, that's what this court should be following. So Hudson got it wrong in reading Mathis and reaffirming Pulliam, and concluding that this conviction counts as a predicate, and we should therefore decide the case on our own without regard to Eighth Circuit precedent. That's right, Your Honor. That is flatly inconsistent with an agreement that Eighth Circuit law applies. You really can't have it both ways. Well, I hear the court, and if the court would like to see a kind of supplemental brief on this point, we'd be happy to provide that in order to provide further clarity. Happy to do that. Can I ask a different question on another subject? And this is the witness tampering offense. This is the sixth. Nobody talks about the witness tampering offense, but I can't find anywhere in the record where this witness tampering offense has been challenged as an ACCA predicate prior to the 2241 filing. And that troubles me. He pled guilty. I know in the plea agreement, he agreed that it was a witness tampering offense. The probation officer, I think, correctly said it's not in the pre-sentence report. The judge accepted the plea agreement. He appealed to the Eighth Circuit. He didn't challenge the witness tampering finding by the district court. Then he filed his 2255, and from what I can see, he did not challenge the witness tampering count as an ACCA predicate. And now here we are on 2241 or seeking 2241 release. And from what I can see, he challenges it for the first time in a 2241 appeal. And that concerns me. It causes me to pause. And is there a place that I can look to to see where he challenged this witness tampering case or why he did this conviction? So a couple of things, Your Honor. I would say that the government's had a couple of opportunities to argue that Mr. Brown's plea agreement bars these challenges. And they've never argued that he's waived his right based on the plea. So we think it would be unfair for the court to rule on an argument that the government has never raised. So that's just with respect to the plea agreement. But so I hope that answers the question. That's a good answer. That's my question. I'm gonna ask the government that question so they can be ready for that. But yes, okay. That's what I wanted to know. Okay. All right. So I'd like to turn now to the Missouri second degree assault conviction. There are five different forms of second degree assault under Missouri law. And the parties have agreed that some of those forms of secondary assault come within the force clause and some of them don't. And so for that reason, the parties agree that the modified categorical approach applies here. And we can look to a limited category of documents that we call shepherd documents in order to ascertain which variant of the statute that Mr. Brown was convicted of. And when we look at these record documents in this case, a plea colloquy, we can't tell which subsection of the statute that Mr. Brown was convicted of. I see that I'm into my rebuttal time already. It went so fast. So with that, I'd like to reserve the balance of my time. That's fine. Thank you. Mr. Reitz. May it please the court, Brian Reitz for the United States. I'm sorry, I mispronounced your name. No. I should know that by now. I'm not sure it's phonetic. I would like to start with the choice of law. And on the verge of looking a gift horse in the mouth, I think I have to clarify a little bit the government's position on this. The government as policy still is not taking a position on the choice of law. So we can't press that Eighth Circuit law does apply, though I think it's fair to say we can accept here Mr. Brown's assertion that Eighth Circuit law applies. And if the court does apply Eighth Circuit law, clearly Hudson is binding. Even if the court applies Seventh Circuit law, its own law, we think Hudson clearly comports with Carter and what this court has said, and Portie as well, specifically about the South Carolina offense. And I'll open up to questions. It strikes me as a weird position to take, by the way, for the government. But anyway, that aside, another thing is, did he waive all this stuff in his play agreement? So the answer to that is yes, your honor. However, we declined to raise it because we did not raise it in the 2255 petition. And so here we decided it was maybe unequitable to raise it when it hadn't been pressed by Mr. Brown's district of conviction in his 2255. And what about the witness tampering offense? Well, I suppose to the same extent, we agreed in our brief that it doesn't count. So I would say we're bound by that as well. But- What is the reason why the government won't take a position on the choice of law issue? Your honor, in the answer to that- Is this to avoid getting caught in a Gunther trap? You know, on the verge of perhaps annoying the court, your honor, I don't know the answer to that. That is above my pay grade. And to this point, the government has been insistent on not taking a position on that to perhaps the frustration of not only its line AUSAs and litigants in courts, but to courts in general. But we- It's a very important issue on these cases and sometimes decisive, as you know. And it's mystifying that the government won't take a position on it because this is a recurring issue that has been now percolating for a long time. I don't disagree. And all I can do is beg the court's apologies for our lack of position on this, though assert that fortunately it's not decisive in this case because- Well, you know, actually, I'm not sure that that's right. I mean, it's just my opinion. I'm not sure that that's right, that it's not decisive in this case. I mean, weapons exhibiting, if we were to look and take a fresh look at weapons exhibiting under the Missouri case law, we might not agree with the Eighth Circuit on whether this qualifies as an ACCA predicate. Your Honor, I think might, it's hard to quibble with the term might. Of course, if the court here is looking at it anew, I can't speak for what it might decide. However, I think that Hudson clearly comports with this court's precedents. Carter analyzed a very similar Iowa statute and found that pointing or exhibiting a gun in a threatening manner is, of course, an attempted or a threatened use of force. Similarly, Portie, which distinguished in the end. But you, I mean, as a prosecutor, you could certainly think of a scenario where someone can possess a gun in an angry manner and it not be, it not have the use or attempted use or threatened use of force, right? People can do that. They probably do that all the time. I could think of a few examples just sitting right here. I think it would be hard when it's an angry exhibition of a gun in the presence of another. Well, wait a minute. Go ahead. Is that an element of the offense in the presence of another? Yes, yes, it is, Your Honor. It says the statute is exhibits in the presence of one or more persons. Any weapon, you know, any lethal, capable of lethal use in an angry or threatening manner. And I want to address the, Your Honors, I guess, hypothesis that we could create a situation. It is Mr. Brown's burden under Duenas-Alvarez to point to an example, not just legal imagination. And the one example that Mr. Brown has pointed to was a road rage incident where the defendant admitted exhibiting the weapon in an angry manner, fired it and it ended up killing someone. So the one example we have is clearly a violent use, a threatened use of force. So I don't think, even if we were here to speculate about some fact patterns, Mr. Brown has not shown that Missouri has applied it in such way. And the element of the angry or threatening manner distinguishes it from the Indiana pointing a statute in Portie that did not have such an element of anger or threatened use of force. If there are no further questions, I do want to make one correction, which to my brief,  to any of the issues before the court, that is that Mr. Brown's armed criminal action was linked to his assault conviction, not his unlawful use conviction, so my brief on that linked the armed action to the wrong offense. So before I sit down, I would disagree with Judge Sykes. This case turns on the unlawful exhibiting conviction and that conviction qualifies under either Eighth or Seventh Circuit law. I'm sorry, could you say that again? What's your clarification? Which of the convictions were linked to the same incident? So the armed career criminal action in Missouri law is, think of it as equivalent to a 924-C. It's linked to one offense, and in my brief, I incorrectly said it was linked to the unlawful use 2003 conviction, but the charging information clearly says that it's linked to the assault from 2003. The second degree assault? Correct, that's what the charging information says. So it doesn't impact anything that, like we stand by our argument that conviction can't count independently, but my brief was incorrect about which it was linked to. Understood, thank you. You're welcome, and with that, we would ask the court to affirm. Thank you. All right, thank you. Ms. Waters. Thank you, I just wanted to clarify, Judge Sykes, your questions about our position, about which law applies. I know that we cited for the court this Chazen decision that it's a toss-up, and this court hasn't decided which one applies, and perhaps I misstated our position. I don't wanna waive that the Seventh Circuit should really be conducting its own independent analysis. So I just wanted to clarify our position. But that's completely different from what you said in your brief, and completely different from what you said in your opening argument. You've maintained consistently until just this very moment that Eighth Circuit law applies. And if that's the case, then we don't conduct our own independent analysis about whether this particular conviction for exhibiting a firearm counts. We accept what the Eighth Circuit has said about it, and we don't disagree. Yeah, if I haven't been clearer than that, I take the court at its word. But what I think we're trying to say in our brief is that there is a reason in this case not to apply Eighth Circuit law because of what the Supreme Court has said, and because of what Missouri Courts of Appeal have said. And for that reason, we don't think it's appropriate here to apply it, given the split, and given that this court hasn't actually determined which is appropriate. We think that if the court does conduct its own independent analysis under Seventh Circuit precedent, that it's clear that this conviction doesn't qualify. And the government has cited this Carter case and believes that Carter is on point here, but we think Carter is very distinguishable. Carter was an assault statute, which by its very nature requires a kind of imminent apprehension of a battery. And the Missouri statute doesn't require a weapon or anything to be pointed at anyone or towards anyone. And furthermore, the Missouri Court of Appeals in the Gein case actually took pains to say that the person to whom the weapon is exhibited actually doesn't even need to view the weapon. So it's clear that an assault statute is very dissimilar from the statute at issue here. So I hope that answers some of the court's question about its own independent analysis. And I think another case that we've provided to the court, the Forti case is really helpful here, because in that case, this court held that even under some circumstances, pointing a weapon at another person doesn't involve the use of force. So if the statute in Forti, which actually requires someone to point a weapon at another person doesn't qualify under the force clause, this Missouri statute can't qualify when we look at it and look at Missouri law. Actually, that's not quite accurate about what the Forti holding was. It was that pointing a firearm without more isn't a crime of violence. And here, this statute contains more elements than just that. It's exhibiting a firearm in the presence of another in an angry or threatening manner. So there is that something more that Forti said was missing in the Indiana statute? Well, they have different elements, Your Honor. You're right that it has angry or threatening manner, but our statute doesn't require the weapon to be pointed at anyone. And so you're right that they have different statutes, but then Forti actually, I would argue, criminalizes conduct that's more serious than the conduct at issue in the Missouri statute. You don't have to point a weapon at anyone in order to be convicted of the statute in Missouri, and yet in Forti, you actually have to point the weapon. That suggests that Forti was wrong. There's a good argument for that, by the way. Respectfully, Your Honor, I don't think that that suggests it's wrong. It's just that it actually comes even closer to something that might be considered a threat of force, and yet this court has, looking to the state law and looking to, in that case, Indiana's state courts of appeal, said we need to analyze this under state law, look at what our state courts have said about this statute, and we, the Seventh Circuit, have been able to find situations where this didn't involve a threat of violent force. So it's not an argument to undermine Forti. It's just to bolster our conclusion that we have to very carefully analyze these statutes under state law and figure out what our state courts of appeal and state Supreme Courts are saying about the statutes. And with that, I see my time is up, so if there are no further questions, we would ask the court to grant Mr. Brown's position. All right, thank you very much, and thanks to both counsel. The case is taken under advisement.